In re Petition of Cyrus G. Barr et al., Citizens of Colerain Township. Appeal of S. W. Swisher, Chas. Whiteside and W. B. Rynear et al.

[Marked to be reported.]

*School laws—Removal of school directors—Discretion of directors—Discretion by the court—Act of June 6, 1893.*

Under the Act of June 6, 1893, P. L. 330, relating to the removal of school directors who have failed to provide proper accommodations for school children, courts of common pleas have the power, through an inspector of their appointment, to ascertain the facts, and determine whether school directors have exercised a sound discretion in providing such accommodations.

The Supreme Court will sustain a decree removing school directors who have refused to provide accommodations for the children of a village where it appears that there were thirty-eight school children in the village; that the three schoolhouses nearest to it were each about a mile and one half distant; that the seating capacity of these houses was insufficient to accommodate the children of the village; that there had been no change in the location of the schoolhouses and no additional schoolhouse facilities during the past sixty years, and that the directors had reduced the tax rate to two mills on the dollar, and had reduced the teachers' salaries $2.00 a month.

The Supreme Court will not reverse an order of the court of common pleas removing school directors for failure to provide suitable school accommodations, unless there is manifest error in its findings or flagrant abuse of its discretion.

Argued May 17, 1898. Appeal, No. 415, Jan. T., 1897, by S. W. Swisher et al., from order of C. P. Lancaster County, Trust Book 16, p. 377, removing school directors. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. MITCHELL, J., dissents.

Rule on school directors to show cause why they should not be removed.

The facts appear by the opinion of BRUBAKER, J., which was as follows:

This is a rule to show cause on the present board of school directors of Colerain township, in this county, why they should not be removed from office by the court, and others appointed in their stead till the next annual election.

The rule is based upon the report of the inspector appointed by the court, under the Act of June 6, 1893, P. L. 330, which reads as follows:

"Section 1. That whenever the school directors, or controllers of any city, borough, township or independent school district shall wilfully neglect or refuse to provide suitable houses, rooms or buildings, in and for any school district within their jurisdiction, and under their supervision and control, with ample room and seating for the reasonable and convenient accommodation of all the school children residing within the district who may be in attendance, or who desire to attend the school or schools therein, then ten or more taxable citizens, residents of the said district, may set forth in writing the facts in the case, under oath or affirmation of at least six persons who sign the statement, and petition the court of common pleas of the county in which said school district is situated, or in vacation any judge of the said court, for the appointment of a competent inspector, and the court or judge thereof may appoint such inspector, whose duty it shall be to visit the district by order of the court or judge thereof, and inquire into the facts set forth in the complaint submitted, giving due notice to the members of the board of directors against whom the complaint for neglect of duty is made, and to other persons concerned, and the said inspector shall report to the court or proper judge thereof, under oath or affirmation, of the result of his personal inspection and investigation, accompanied by statements of facts and proofs obtained in the case.

"Section 2. If, after hearing the allegations and proofs offered to substantiate the charges set forth in the complaint or to disprove them, and after having fully and diligently inquired into all the facts and circumstances bearing on the case in point,

the aforesaid inspector finds that the directors or controllers have refused, neglected or failed, without valid cause for such refusal, neglect or failure on their part, to provide and maintain suitable and adequate accommodations for the school children of the district as the law requires, he shall so report to the court or the judge appointing him, and the court in such case is hereby authorized and empowered to grant a rule upon the directors or controllers then having jurisdiction in the district, or such of them as have wilfully neglected or failed without justifiable excuse to perform the duties enjoined upon them by law, to show cause why the court or judge thereof should not remove them from office and appoint others in their stead, until the next annual election for directors."

Under the school law of 1854, the courts of this commonwealth have invariably refused to interfere with the discretion of school directors in all matters, especially in the building and location of schoolhouses, for the reason that matters of discretion are not reviewable in law or equity. It is only in cases of bad faith equivalent to fraud that these courts would interfere, suggesting that the remedy for the abuse of discretion was in the votes of the taxpayers at the polls. The act of 1893, however, has expressly given to courts enlarged powers. Justice DEAN, in delivering the opinion of the Supreme Court on an interpretation of this act of assembly in In re Rule upon G. S. Walker, Ross's App., 179 Pa. 24, says, among other things: "There is no doubt, however vaguely expressed, that the legislature intended by the act of 1893, to confer a certain power of supervision of the discretion of school boards on the state courts, which, under the law of 1854, they did not theretofore have."

And further on in commenting upon the wording of section 1, viz: "If the directors 'shall wilfully neglect or refuse' to provide houses, rooms or buildings, then on petition of ten or more taxable citizens, the court shall act." "This imposes upon the court the duty," says Justice DEAN, "through its own appointees of investigation and putting upon record the facts and testimony. If the inspector then finds that 'without valid cause' the directors have neglected or refused to perform their duty, he shall report. It will be noticed, the words, 'wilfully neglected and refused,' are here dropped, and the words, 'without valid cause,' substituted; words not by any means

importing the same thing.   If a duty be enjoined on an officer, his refusal to perform it is wilful.   He has no discretion as to its performance.   But, if he be commanded to do a certain act, unless he have a valid cause for not doing it, and he then refuses for cause, the question is at once raised between him and his superior, whether the cause is sufficient to excuse him in his disobedience ; it brings the judgment and discretion of the subordinate at once under the supervision of his superior.   And further reading of section 2, bears out this view.   It says, the court is empowered to grant a rule on those directors who 'have failed without justifiable excuse' to perform the duty enjoined."

This decision also settles another question raised in the same case ; that is, that the finding of fact by the inspector is not conclusive, like that of an auditor, on the court below.   His reported conclusions are subject to a careful review on the rule to show cause on school directors, which the act of assembly authorizes, in case the inspector finds that the directors have refused, neglected or failed to provide adequate accommodations, as required, " without valid cause for such refusal, neglect or failure."

We have very carefully examined the testimony and the report of the inspector in this case, because we feel that the power given us by the act of assembly should be exercised only in a very clear case.   The facts in this case, as we gather them from the testimony taken by the inspector, are plain, and clearly show that there is an absolute necessity for a new schoolhouse at the village at Kirkwood.   [The testimony shows, as the inspector says, that there are thirty-eight children of school age in the village of Kirkwood, within a radius of half a mile from the center, and the nearest schools to the said village, which these pupils now attend, are each a mile and a half distant, and that the seating capacity for all the school children residing within the district, who desire to attend these schools is insufficient to accommodate them.   These facts are uncontroverted. The testimony also shows, and the inspector so reports as the fact, that there has been no change in schoolhouse sites or locations during the past sixty years, and no additional schoolhouse facilities were furnished in that time, and the school tax rate in said district in 1895 was but two and a half mills on the dollar, which was reduced to two mills in 1896, and that

the board of school directors had reduced the salaries of their teachers $2.00 a month; while the school law authorizes an amount of tax to be levied annually equal in amount to the county and state taxes, which is thirteen mills on the dollar for school purposes and an equal amount for building purposes, making in all twenty-six mills on the dollar.

It seems to us that there could scarcely be a stronger appeal made to the legal discretion of a court, than the one now before us.] [The abuse of discretion in this case is very clear, in our opinion, which compels us to make this rule absolute, the costs to be paid by the school district.]

*Error assigned* was the order of the court.

*B. F. Davis*, with him *James M. Walker*, for appellee.—The matter of school accommodations is within the discretion of the directors: Nicklas's Petition, 146 Pa. 212; Freeman v. School Directors, 37 Pa. 386.

The authority of the court should be strictly construed: Butler School District Case, 158 Pa. 165; In re School Directors of Kingsley Twp., 5 Pa. Dist. Rep. 750; Dame's App., 62 Pa. 422; Schooner Paulina's Cargo v. United States, 7 Cranch, 52; Rex v. Stoke Damerel, 7 Barn. & Cress. 563; Rex v. Poor Law Commissioners, 6 Ad. & Ell. 1; Everett v. Wells, 2 Scott's New Reps. 531; Potter's Dwarris on Statutes, 146; Supervisors of Niagara v. The People, 7 Hill, 513; Priestman v. United States, 4 Dall. 28; Sedgwick on the Construction of Statutory and Constitutional Law, 205; Rex v. Barham, 8 B. & C. 99; Woodbury & Co. v. Berry, 18 Ohio, 462; Frye v. C., B. & Q. R. R., 73 Ill. 402; Smith v. State, 66 Md. 217.

The appeal in this case was warranted by the act of May 19, 1897.

*J. Hay Brown* and *W. U. Hensel*, for appellees.—The court had power to remove the directors: Ross's App., 179 Pa. 25; In re Petition of Kittanning Twp., 179 Pa. 60; Keating v. Jordan, 181 Pa. 171.

The decree of the lower court will be reversed only on manifest error: Roth v. Marshall, 158 Pa. 273.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:

This was a proceeding under the act of June 6, 1893, to

remove the board of school directors of Colerain township school district, Lancaster county, for neglect and refusal to provide suitable schoolhouses within the district to accommodate all the school children residing therein. The court appointed an inspector as provided by the act, who took much testimony on both sides, and in a very careful report finds that the averments of the petition are true. On the report being presented to the court additional testimony was taken in the shape of depositions; the court again carefully considered the whole subject, and in an unanswerable opinion filed concurred with the inspector. Then, an order of removal was made, a new board appointed, which was recognized by the state department, a tax laid and a new schoolhouse built. From the decree of removal we have this appeal by the old board. The principal assignment of error is an attack on the power of the court under the act of 1893. We shall not repeat what we said in Ross's Appeal, 179 Pa. 25, and in Kittanning School District's Appeal, 179 Pa. 60. After a careful consideration we adopted the construction of the act announced in those cases, and we adhere to it now. Evidently when the legislature adopted the policy of largely increased state appropriations, it also adopted the policy of conferring on the state courts enlarged powers of supervision. The millions of additional money appropriated were not intended to lessen local taxation, but to increase the efficiency of the schools.

The court below, on ample testimony, has found the facts warranting its decree; we would not touch it, unless there was a manifest error in its finding or a flagrant abuse of its discretion. Not the semblance of either is shown. The decree is affirmed, and appeal dismissed at costs of appellant.

Mr. Justice Mitchell, dissenting:

Though I did not note a dissent in the cases giving a construction to the act of 1893, I did not concur in them, as I was and am of opinion that all that act intended was to authorize the courts to compel the exercise by the school directors of the powers vested in them by the law, in other words, to enforce attention to their duties, not to substitute the judgment or discretion of the inspector or the court for that of the officers to whom the people, under the law, had committed the authority.

This case is the application of those decisions run into extremes. The appellants, a new board, were ousted for the nonaction of the old one, on a question of difference in judgment between both boards and the court, and when the matter came again before the people as the ultimate tribunal to settle it, they voted to restore the ousted board. The result therefore of this case is that the court of common pleas of Lancaster county is managing the school affairs of Colerain township on its own judgment, not only against the judgment of the officers primarily charged with that duty, but against the expressed will of the people themselves. I dissent entirely from such judicial usurpation of functions committed by law to elected officers.